# EXHIBIT A

Daniel Valles (SBN 269137)
dan@valles.law
Michiko Vartanian (SBN 323979)
michiko@valles.law
Kayla M. Rathjen (SBN 330046)
kayla@valles.law
Chase W. Laurent (SBN 355822)
chase@valles.law

**VALLES LAW, P.C**
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, CA 90266
Telephone: (415) 234-0065
Facsimile: (510) 369-2075

Attorneys for Plaintiffs
JANE DOE

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**08/24/2026**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

**CGC-26-640260**

| | |
|---|---|
| JANE DOE, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>WALKME, INC, a Delaware Corporation; DANIEL "DAN" ADIKA, an individual, and DOES 1-50, inclusive;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. HARASSMENT IN VIOLATION OF FEHA (GOV. CODE §12940(J))**<br>**2. DISCRIMINATION IN VIOLATION OF FEHA (GOV. CODE §12940(A))**<br>**3. RETALIATION IN VIOLATION OF FEHA (GOV. CODE §12940(H))**<br>**4. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA (GOV. CODE §12940(N))**<br>**5. RETALIATION FOR REQUESTING ACCOMODATION IN VIOLATION OF FEHA (GOV. CODE §12940(L)(4) AND (M)(2))**<br>**6. FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF FEHA (GOV. CODE §12940(M))** |

7. **RETALIATION FOR TAKING CFRA LEAVE (GOV. CODE §12945.2 AND 2 C.C.R. §7297)**

8. **RETALIATION IN VIOLATION OF LABOR CODE §98.6**

9. **WHISTLEBLOWER RETALIATION**

10. **FAILURE TO PAY ACCRUED VACATION WAGES (LABOR CODE §227.3)**

11. **FAILURE TO PAY ALL WAGES EARNED UPON DISCHARGE (LABOR CODE §§201, 202 AND 203)**

12. **UNLAWFUL BUSINESS PRACTICES (BUSINESS AND PROFESSIONS CODE §17200)**

**DEMAND FOR JURY TRIAL**

Plaintiff JANE DOE ("**Plaintiff**") by and through her attorneys of record, hereby alleges the following Complaint against Defendants WalkMe, Inc. ("**WalkMe**"), Daniel "Dan" Adika ("**Adika**"), and Does 1 – 50 (collectively as "**Defendants**" and each individually as a "**Defendant**") as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendants for violations of, among other things, the California Fair Employment and Housing Act, Cal. Gov. Code §§ 12940 et seq. ("**FEHA**") and the California Business and Professions Code §17200.

2. Defendants hired Plaintiff in or around February 2023 as an Executive Assistant and was promoted to Senior Executive assistant in September of 2024. During Plaintiff's tenure at WalkMe, she performed exceptionally and beyond expectations even garnering a significant raise after only a year of being employed in her position. Despite her many achievements, Defendants discriminated against Plaintiff because of her disability and age as well as sexually harassed her by blatantly displaying sexual favoritism towards another employee.

3. Plaintiff seeks all appropriate relief, including, but not limited to, backpay, front pay, compensatory damages, punitive damages, and attorneys' fees and costs.

4. Plaintiff also demands a jury trial on all claims so triable.

## THE PARTIES

5. Plaintiff is a resident of the State of California, County of San Francisco.

6. During her tenure with WalkMe, Plaintiff was employed by and performed services for WalkMe in the County of San Francisco in the State of California.

7. Defendant Adika is the Chief Executive Officer of WalkMe and Plaintiff is informed and believe that Adika is presently a resident of the state of New York.

8. Plaintiff is informed and believe that WalkMe is presently a Delaware Corporation headquartered in San Francisco, California and that it does business in and employs individuals in the County of San Francisco.

9. WalkMe maintains its headquarters in California at an office located at 350 Mission Street, Floor 26 in San Francisco, California.

10. WalkMe was Plaintiff's employer within the meaning of California Government Code §§ 12926(d), 12940 (a), (h), (l), (h) (3) (A) and (i), and 12950, and the California Labor Code, and regularly employs five (5) or more persons and are therefore subject to the jurisdiction of this Court.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1-50, inclusive, are unknown to Plaintiff at this time and therefore said Defendants are sued by such fictitious names. Plaintiff will seek leave to amend this Complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiff. Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named Defendants are responsible for the wrongful acts alleged herein and is therefore liable to Plaintiff as alleged hereinafter.

12. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendants, and each of them, was the agents, employees, managing agents, supervisors, conspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, was acting at least in part within the course and scope of said agency, employment, conspiracy, joint employment, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants.

13. Plaintiff is informed and believes, and based thereupon alleges, that Defendants, and each of them, including those Defendants named DOES 1-50, acted in concert with one another to commit the wrongful acts alleged therein, and aided, abetted, incited, compelled, and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so. Plaintiff is further informed and believes, and based thereupon alleges, that Defendants, and each of them, including those Defendants named as DOES 1-50, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to and actually causing Plaintiff harm.

14. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly, and severally.

///

## JURISDICTION AND VENUE

15. The monetary value of Plaintiff's claims exceeds $35,000.

16. The amount in controversy herein is within the jurisdiction of this Court.

17. The acts, omissions, damages, and injury that form the basis of this lawsuit were sustained, at least in part, in the County of San Francisco, California.

18. WalkMe is qualified to do business in California and is headquartered in San Francisco, California.

19. Plaintiff is a resident of the State of California, County of San Francisco.

20. This Court is the proper Court, and this action is properly filed in San Francisco County because (i) Plaintiff resides in the State of California, (ii) WalkMe is headquartered in San Francisco, California, (iii) Defendants' obligations and liability arise in the County of San Francisco, (iii) WalkMe transacts business within San Francisco County, and (iv) because the work that is the subject of this action was performed by Plaintiff in the State of California and county of San Francisco.

## ALTER EGO, AGENCY, AND JOINT EMPLOYER

21. Plaintiff is informed and believe, and based thereon alleges, that there exists such a unity of interest and ownership between Defendants and DOES 1-50 that the individuality and separateness of Defendants have ceased to exist.

22. Plaintiff is informed and believe, and based thereon alleges, that despite the formation of purported corporate existence, DOES 1-50 are, in reality, one and the same as Defendants, including, but not limited to because:

a. Defendants are completely dominated and controlled by DOES 1-50, who personally violated the laws as set forth in this complaint, and who have hidden and currently hid behind Defendants to circumvent statutes or accomplish some other wrongful or inequitable purpose.

b. DOES 1-50 derive actual and significant monetary benefits by and through Defendants' unlawful conduct, and by using Defendants as the funding source for their own personal expenditures.

c. Plaintiff is informed and believe that Defendants and DOES l-50, while really

one and the same, were segregated to appear as though separate and distinct for purposes of circumventing a statute or accomplishing some other wrongful or inequitable purpose.

d. Plaintiff is informed and believe that Defendants do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e. Plaintiff is informed and believe, and based thereon alleges, that the business affairs of Defendants and DOES 1-50 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. Defendants are, and at all times relevant hereto was, used by DOES 1-50 as a mere shell and conduit for the conduct of certain of Defendants' affairs, and are, and were, the alter ego of DOES 1-50. The recognition of the separate existence of Defendants would not promote justice, in that it would permit Defendants and DOES 1-50 to insulate themselves from liability to Plaintiff for violations of the Government Code, Labor Code, and other statutory violations. The corporate existence of Defendants and DOES 1-50 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to Plaintiff herein.

23. Accordingly, Defendants constitute the alter ego of DOES 1-50, and the fiction of their separate corporate existence must be disregarded.

24. As a result of the aforementioned facts, Plaintiff is informed and believe, and based thereon alleges that Defendants and DOES 1-50 are Plaintiff' joint employers by virtue of a joint enterprise, and that Plaintiff was an employee of Defendants and DOES 1-50. Plaintiff performed services for each and every one of Defendants and DOES 1-50, and to the mutual benefit of all Defendants and DOES 1-50, and all Defendants, including DOES 1-50, shared control of Plaintiff as employees, either directly or indirectly, in the manner in which Defendants' business was and is conducted.

**<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

25. At all times herein mentioned, the FEHA was in full force and effect and binding on Defendants.

26. Within the time provided by FEHA and in compliance with the requirements of FEHA, Plaintiff filed a complaint with the California Department of Fair Employment and Housing now the

Civil Rights Division ("**CRD**") and received right to sue letters. As such, Plaintiff has satisfied Plaintiff's administrative prerequisites with respect to these and all related filings.

**FACTUAL ALLEGATIONS**

27. Defendants have a pattern and practice of discriminating against employees in the workforce in violation of FEHA.

28. Plaintiff, who is 47 years old, was a highly regarded and trusted Senior Executive Assistant during her employment with WalkMe, where she excelled for over two years following her hire on February 6, 2023, and was even promoted from Executive Assistant to Senior Executive Assistant because of her performance.

29. In this critical role, Plaintiff provided seamless administrative and strategic support to four of WalkMe's top executives. Plaintiff was initially hired to only support Scott Little, the Chief Revenue Officer ("**Little**") and Adriel Sanchez, the Chief Marketing Officer ("**Sanchez**"). However, because of her excellent performance, her job duties were expanded to all support Amy Farrant, the Go-To-Market Chief Operating Officer ("**Farrant**"), and Mark Richter, the Senior Vice President of AMER ("**Richter**"). Managing the demands of multiple senior leaders, Plaintiff consistently demonstrated exceptional organizational skills, discretion, and efficiency—qualities that earned her repeated praise and trust from leadership.

30. Throughout her tenure, Plaintiff maintained an exemplary record. At no point was she counseled, disciplined, or advised of any performance deficiencies. To the contrary, her ability to juggle complex schedules, high-level communications, and sensitive projects for multiple executives reflected her value as an indispensable member of the team. WalkMe never issued a performance improvement plan, warning, or any form of corrective action—clear evidence that Plaintiff met and exceeded expectations in her role.

***Plaintiff Is Subjected to a Hostile Work Environment Due to Sexual Favoritism***

31. On the very first day that Plaintiff stepped foot in WalkMe's office after being hired in February of 2023, Plaintiff was expressly told by WalkMe's office manager (as well as numerous other individuals) that Adika, the Chief Executive Officer of WalkMe, was in a sexual relationship with Gali Levy ("**Levy**"), his assistant and Plaintiff's colleague.

32. In fact, Plaintiff was openly and expressly warned by WalkMe's office manager that, because of Levy's sexual relationship with Adika, if Plaintiff wanted to keep her job, then she should never get on Levy's bad side as Adika gives her special preferential treatment because of their relationship. In fact, Plaintiff was consistently told that Levy can do no wrong at WalkMe because of her sexual relationship with Adika.

33. In addition to the foregoing, Plaintiff was also expressly informed that Levy and Adika had engaged in an affair while Adika's ex-wife was also employed at WalkMe[1] and while they had two kids together. Plaintiff was told Adika and Levy "don't care who knows" or about "showing it off." As a result, Adika has a history of engaging in sexual relationships with his subordinates, which only reinforced the message to Plaintiff and other female employees that, if you sleep with your boss or WalkMe's male management, that you will get preferential treatment and ahead at WalkMe.

34. Adika's and Levy's sexual relationship was widely known throughout WalkMe and created an environment where Levy received extreme preferential treatment. Plaintiff was repeatedly told that she needed to "kiss up" to Levy to secure her job and avoid retaliation.

35. This pressure to appease Levy at all costs was intense, consistent, and omnipresent, regardless of Levy's lack of responsiveness to work communications or engagement with her professional responsibilities. Levy regularly and routinely would not perform her job duties or respond to work related requests at all, which left Plaintiff regularly having to do both of their job duties or, worse yet, force Plaintiff to have to waiting days on end to be able to complete her job duties while waiting for Levy to complete even the most basic of tasks. Yet Levy's status and influence remained untouchable.

36. Whenever Plaintiff would complaint about the preferential treatment that Levy was provided and the fact that Levy was not doing her job or responding to work related requests at all, which were adversely affecting Plaintiff's job, Plaintiff was told not to "persist" and Plaintiff was not to "rock the [Levy] boat," further illustrating her immunity from accountability. Moreover, Plaintiff

[1] Mr. Adika's ex-wife is no longer a WalkMe employee.

was also told not to complain if Levy was not doing her job as that would result in Plaintiff losing her job.

37. Additionally, while Levy was never disciplined or held accountable whatsoever for not performing her own tasks, Plaintiff had to walk on proverbial eggshells as any comment, whether or true or not, by Levy about Plaintiff would result in Adika specifically instructing Little to reprimand Plaintiff so as not to upset Levy. Levy knew this fact and would take advantage of it just to exercise her power over Plaintiff and others because of her sexual relationship with Adika.

38. For example, on one occasion in December 2024, Adika instructed Little to reprimand Plaintiff for allegedly "not doing what Levy wanted" despite the fact that Levy was never Plaintiff's boss (nor did Little report to Levy) and there was written proof that Plaintiff had done every single thing asked by Levy such that even Little, who was Plaintiff's supervisor, acknowledged to Plaintiff that he knew Plaintiff did her job and was doing her job, but that he had to tell her anyway to appease and keep both Levy and Adika happy. This consistently reinforced the fact that Levy was given special and preferential treatment

39. WalkMe's management, including Little who was Plaintiff's own manager, explicitly and repeatedly told Plaintiff, "If [Plaintiff] make[s] [Levy] happy, [Plaintiff] makes [Adika] happy and that should be [Plaintiff's] goal."

40. Levy was also given preferential treatment and exempted from Companywide policies and procedures. For example, despite WalkMe's company-wide policy mandating the use of Slack and email for internal communications, Levy refused to use these platforms and was then given preferential treatment by WalkMe that allowed her to mandate that WalkMe employees only communicated with her through WhatsApp while every other employee was required to use Slack. Plaintiff and other employees were expected to accommodate these deviations from protocol without question, reinforcing the perception that Levy operated outside normal rules because of her sexual relationship with Adika.

41. The sexual relationship between Levy and Adika was also openly displayed at company events and business travel. For example, at the Company's January 2024 Sales Kickoff in New Orleans and the January 2025 Sales Kickoff in Miami, Levy and Adika traveled together, stayed

together in the same hotel room, and engaged in overt physical displays of affection in front of WalkMe's employees, including, but not limited to, Adika placing and leaving his hand to Levy's buttocks while circulating through the event venue. These public displays reinforced to Plaintiff and other employees that Levy's influence derived from her intimate relationship with the CEO and that, if one wanted to get ahead or receive preferential treatment at WalkMe, they needed to submit to the sexual advances of WalkMe's senior male leadership.

42. Levy was also provided special treatment for travel as she was allowed to travel at the Company's expense to events that she was not and did not participate in professionally and that Plaintiff, and other assistants, were not permitted to travel to. In fact, Levy routinely traveled and travels with Adika to events, which are expensed to the Company, that no other employee would be permitted to travel to that is not actually participating professionally in the event. For example, Levy traveled with Adika to San Francisco for the Q3 2023 QBR in San Francisco and, despite being present in San Francisco, Levy did not attend or contribute to the event whatsoever as she was essentially flown to the event solely to accompany Adika because of her sexual relationship with him.

43. Plaintiff is also informed and believes that Levy was and is paid more than Plaintiff and other similarly situated employees because of her sexual relationship with Adika.

44. This entrenched culture of sexual favoritism conveyed to all employees, including Plaintiff, that advancement, job security, and workplace standing were dependent on Levy's favor rather than merit, qualifications, or job performance. Long-term employees confirmed that even after a decade with the company, their positions could be jeopardized by displeasing Levy.

45. Plaintiff worked under constant awareness that Levy's personal dislike of her—or any perception of such—could result in adverse consequences to her employment, as Levy's animus would be shared by Adika. This environment, created and perpetuated by WalkMe's executives, constituted severe and pervasive conduct that altered the conditions of Plaintiff's employment and created a hostile work environment based on sexual favoritism in violation of the Fair Employment and Housing Act.

46. Worse, this was not limited to just Adika as Plaintiff's supervisors and other male employees would often make sexual jokes or comments in front of Plaintiff as well throughout her

employment. For example, in January of 2025, Plaintiff was with Little, Richter, Sanchez and other WalkMe employees at a work event and having a work conversation when Sanchez, who is one of Plaintiff's direct supervisors, began to joke about the women that he was sleeping with. Despite this being an inappropriate commentary and conversation, all of Plaintiff's male supervisors (i.e., Sanchez, Richter and Little) just started openly laughing and, thereby, encouraged the inappropriate conversation to continue. As this was Plaintiff's direct supervisor, Plaintiff was made to feel extremely uncomfortable and was forced to remove herself from the group and conversation.

47. These types of comments and behavior by WalkMe's senior male leadership was consistent and occurred often as this type of behavior was not only tolerated by WalkMe, but is wans was part of the overall culture at WalkMe.

***Plaintiff Faces a Medical Emergency and Must Take a Leave of Absence, Culminating In Her Retaliatory Termination***

48. On February 18, 2025, Plaintiff faced an unexpected medical emergency, resulting in hospitalization for a minor brain impairment, about which she informed WalkMe, Little, Farrant, Sanchez, and Richter. Plaintiff remained under hospital care for ten (10) days, until her release on February 28, 2025. Following medical advice, she completed her recovery at home through March 10, 2025, when she was formally cleared by her physician to return to work.

49. While on protected medical leave, WalkMe nonetheless continued to direct Plaintiff to perform work-related tasks and respond to HR inquiries, creating an improper expectation that she remains actively engaged in her job duties while on a protected medical leave of absence. Despite her health condition, Plaintiff complied even as WalkMe's actions interfered with her right to an uninterrupted leave under FEHA and CFRA.

50. On March 3, 2025, HR Representative Lauren Kim ("**Kim**") reached out regarding medical leave options and, during a call on March 5, 2025, Kim clearly stated to Plaintiff that no doctor's release was required for Plaintiff to resume her duties after her medical leave absence. Relying on this assurance, Plaintiff returned to work on March 10, 2025, resuming full responsibility for supporting four high-level executives without issue.

51. On March 11, 2025, Kim followed up to confirm that Plaintiff's PTO and sick leave

would be applied to cover her pay for her hospitalization and recovery days despite the fact that Plaintiff performed work during her leave of absence.

52. However, during the week of March 31, 2025, Kim abruptly requested a doctor's release from Plaintiff despite her prior statements stating that one was not needed. Plaintiff immediately complied and disclosed that, while medically cleared to return to work, she was still managing minor vision-related symptoms that did not interfere with her ability to perform her job duties provided that she continue to be allowed to incorporate brief breaks during work day as recommended by her doctor, which is an accommodation requiring minimal, if any, adjustment. She reiterated to Kim that, with this minor accommodation, she could continue doing her job.

53. Despite Plaintiff's continued high-level performance, on April 10, 2025, she was abruptly informed during a Zoom call with Little and Senior Director of People & Employee Relations Connie Meisel ("**Meisel**") that her employment was being terminated, effective April 11, 2025. Little vaguely cited "executive changes" as the reason for eliminating her role. No legitimate business justification was provided. In fact, when asked directly by Plaintiff if this had antying to do with her performance, Little affirmatively said no.

54. When Plaintiff reasonably asked how WalkMe intended to manage executive operations without her, Meisel dismissively replied, "they will figure it out." This response underscored that the decision was not driven by operational needs, but rather by improper motives.

55. Notably, Plaintiff was immediately replaced by a significantly younger employee (under the age of 40), Jenny Elg ("**Elg**"), who assumed Plaintiff's former responsibilities the day after Plaintiff's position was allegedly "eliminated." The decision to fill Plaintiff's supposedly "eliminated" position with a younger worker—particularly so soon after her termination—further exposes the pretextual nature of WalkMe's justification and provides direct evidence of age-based discriminatory intent.

56. The suspicious timing, which was mere weeks after Plaintiff's protected medical leave and disclosure of a disability and need for a reasonable accommodation, combined with the absence of any performance concerns, proves WalkMe's unlawful discrimination and retaliation.

57. Furthermore, WalkMe's actions occurred in a broader context where older employees,

like Plaintiff, faced disproportionate scrutiny and adverse treatment, further supporting claims of age-based bias, including specifically by Little himself who has a pattern and practice of such actions.

***WalkMe Forced Plaintiff to Forfeit Accrued but Unused Vacation for Days and Hours Plaintiff Performed Work***

58. Under California law, vacation is treated the same as earned wages and vests when an employee performs the work giving rise to the vacation. Labor Code §227; *see also Suastez v. Plastic Dress-Up Co.,* (1982) 31 Cal. 3d 774.

59. In fact, California has a policy of "jealously protect[ing]" wages, and the effect of "[Labor Code] section 227.3 and [*Suastez v. Plastic Dress-Up Co*., (1982) 31 Cal.3d 774]" is to "prohibit any forfeiture of a private employee's vested vacation time." *Boothby v. Atlas Mechanical, Inc.,* (1992) 6 Cal.App.4th 1595, 1601

60. As noted above, Plaintiff was required to work and did work during her PTO. However, WalkMe did not pay Plaintiff for those hours worked.

61. Rather than deduct for the vacation hours actually taken by Plaintiff, WalkMe deducted a full day from Plaintiff's PTO balance even though only a partial day absence was taken thereby stealing wages from Plaintiff as vacation pay is wages. *See Suastez,* 31 Cal. 3d at 779-780 ("[v]acation pay is simply a form of deferred compensation..." and is "'simply an alternate form of wages, earned at the time of other wages, but whose receipt is delayed'"); *see also Boothby, v*6 Cal.App.4th at 1601 (vacation pay falls within the statutory definition of "wages" in Labor Code section 200).

62. In California, if an employer provides vacation benefits, the employer "is not free to reclaim it after it has been earned." *Henry v. Amrol, Inc*., (1990)222 Cal.App.3d Supp. 1, 5,). However, here, WalkMe has done just that.

63. As a result, WalkMe not only refused to pay Plaintiff with all of her wages during her employment, but has continued to refuse to pay her for the wags that were due and owed to her for the hours that she worked.

///

///

***Defendants Threaten Plaintiff with Legal Action***
***in Retaliation for Reporting Daniel Adika's Sexual Harassment***

64. On or about May 28, 2025, shortly after Plaintiff, through counsel, raised formal complaints of sexual harassment, including sexual favoritism, against WalkMe and Adika, Defendants' counsel, Sheeva Ghassemi-Vanni a Partner at Fenwick & West LLP in its Labor and Employment Group ("**Ghassemi**"), expressly threatened legal action against Plaintiff in direct response to these protected activities.

65. Specifically, Defendants, through Ghassemi, directly threatened Plaintiff that WalkMe and Adika were "currently assessing potential counterclaims against [Plaintiff]" if she pursued any lawsuit against Adika and WalkMe. This threat was designed to prevent Plaintiff from pursuing any action against Adika and WalkMe.

66. Consequently, Defendants specifically and intentionally communicated a direct threat to Plaintiff that both WalkMe and Adika intended to pursue a retaliatory litigation against Plaintiff if she continued to exercise her rights under FEHA or file a lawsuit exposing WalkMe's and Adika's illegal activities.

67. This threat of litigation constituted an adverse employment action under Labor Code §§1102.5 and 98.6, as it was reasonably likely (and actually intended by Defendant) to deter a reasonable employee from engaging in protected activity, including reporting unlawful conduct, filing a complaint, or otherwise asserting workplace rights.

68. Defendants' retaliatory threat was made in direct temporal proximity to Plaintiff's protected disclosure of sexual harassment, further evidencing a causal link between the protected activity and the adverse action.

69. By threatening to sue Plaintiff for engaging in protected activity, Defendants willfully violated Labor Code §§1102.5(b) and 98.6(a), which prohibit retaliation against an employee for disclosing information regarding conduct the employee reasonably believes violates state or federal law, and for exercising rights under the Labor Code.

///

///

**FIRST CAUSE OF ACTION**

HARASSMENT IN VIOLATION OF FEHA

(California Government Code §12940(j))

(Against All Defendants)

70. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

71. At all times relevant to this action, FEHA was in full force and binding upon Defendants.

72. California courts have long recognized that widespread sexual favoritism—where employment opportunities and job security appear to hinge on a supervisor's sexual relationship with an employee—constitutes unlawful sexual harassment under FEHA.

73. A sexual harassment hostile work environment can also be established in situations where the individual may not be personally subjected to unwanted harassing behavior but witnesses harassing conduct taking place in his or her immediate work environment. *Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, 519-520.

74. In *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, the California Supreme Court held that "widespread sexual favoritism in the workplace may constitute actionable sexual harassment under the FEHA when it is so pervasive that it alters an employee's working conditions and creates a hostile work environment." *Id.* at 466. The Court reasoned that when a reasonable woman could believe that she is disadvantaged because of her sex in terms of the opportunities available to her, the conduct is sufficiently severe and pervasive to violate FEHA. *Id.* at pp. 466–468.

75. The facts alleged here mirror *Miller*. Adika engaged in a longstanding sexual relationship with Levy, a subordinate employee, that was not only common knowledge within the company but flaunted by both Levy and Adika. The relationship conferred on Levy extraordinary and unwarranted influence over business decisions, communication protocols, and personnel treatment. Employees—including Plaintiff—were repeatedly warned that their continued employment depended on "keeping [Levy] happy" and avoiding her "bad side."

76. Whenever Plaintiff would complaint about the preferential treatment that Levy was

provided and the fact that Levy was not doing her job or responding to work related requests at all, which were adversely affecting Plaintiff's job, Plaintiff was told not to "persist" and Plaintiff was not to "rock the [Levy] boat," further illustrating her immunity from accountability.

77. Moreover, Plaintiff was also told not to complain if Levy was not doing her job as that would result in Plaintiff losing her job.

78. The preferential treatment was not isolated but systemic: Levy traveled with the CEO, attended high-profile events without contributing to the work, was openly affectionate with him in professional settings, and was shielded from accountability in ways no other employee enjoyed. This created an environment where advancement and job security were tied not to merit, but to personal and sexual access to the CEO.

79. Plaintiff is also informed and believes that Levy was paid more than other administrative assistants not because of merit, but because of her sexual relationship with Adika.

80. Under *Miller*, these facts establish that Plaintiff was subjected to a hostile work environment based on sexual favoritism. The favoritism was so severe and pervasive that it fundamentally altered the terms and conditions of Plaintiff's employment, including, but not limited to, causing Plaintiff to work under constant pressure to appease Levy to safeguard her position. FEHA prohibits this form of sex-based harassment, and Plaintiff's claim is well-supported by binding authority.

81. In addition to the foregoing, Defendants also harassed Plaintiff because of her disability by specifically forcing her to work while on a leave of absence.

82. Within the time provided under FEHA, Plaintiff filed complaints against Defendants with the CRD in full compliance with these sections and received right-to-sue letters.

83. At all times relevant to this action, Defendants unlawfully harassed Plaintiff, as previously alleged, on the basis of sexual favoritism and her disability.

84. As a direct and proximate result of Defendants' harassment, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

85. As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

86. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of Defendants acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

87. Plaintiff is informed and believes and thereon alleges that the actions of Defendants' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendants and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

88. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

## SECOND CAUSE OF ACTION

DISCRIMINATION IN VIOLATION OF FEHA

(California Government Code §12940(a))

(Against WalkMe and Does 1-50)

89. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

90. At all times relevant to this action, FEHA was in full force and binding upon WalkMe. At all times relevant hereto, WalkMe was Plaintiff's employer and, therefore, subject to FEHA.

91. FEHA is not preempted by the Workers' Compensation Act. *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156.

92. FEHA also provides that an employer with five (5) or more employees must provide an employee with a physical or mental disability medical leave as a reasonable accommodation for the disability. 2 Cal. Code Regs. §11065(p)(2)(M).

93. FEHA requires WalkMe refrain from discriminating against any employee "in terms, conditions, or privileges of employment," including, but not limited to, terminating, or demoting such employee, on the basis of a protected characteristic, including, but not limited to sex, age and disability.

94. FEHA also makes it an unlawful employment practice for WalkMe to discriminate against any employee based upon the perception that the employee is a member of a protected class of that the employee is taking or has taken certain actions because the employee is a member of a protected class.

95. If an individual participates in the decision-making process, tacitly approves of the improper action, fails to take action upon learning of the unlawful conduct, or participates in the unlawful conduct that is the basis of the discriminatory condition, the individual is considered to have aided and abetted under FEHA. *Matthews v. Superior Court* (1995) 34 Cal.App.4th 598.

96. At all times relevant to this action, Plaintiff was a member of a protected class within the meaning of California Government Code §12940 *et. seq*., because Plaintiff is a woman, over the age of 40 and had a disability under the law. WalkMe was aware of Plaintiff's sex, disability and age.

97. As stated herein above, Plaintiff had a disability that limited her major life activities. WalkMe was aware of Plaintiff's disability as well as perceived Plaintiff to have a disability.

98. Additionally, WalkMe perceived Plaintiff as being a member of a protected class within the meaning of California Government Code §12940 *et. seq*. Specifically, WalkMe perceived Plaintiff to be an older woman and disabled employee.

99. Within the time provided under FEHA, Plaintiff filed complaints against Defendants with the CRD in full compliance with these sections and received right-to-sue letters.

100. At all times relevant to this action, WalkMe unlawfully discriminated against Plaintiff, as previously alleged, on the basis of Plaintiff's sex, age and disability.

101. At all times relevant to this action, Plaintiff was able to perform the essential duties of Plaintiff's position with WalkMe with reasonable accommodations. At all times relevant to this action, Plaintiff was qualified to do her job.

102. WalkMe was substantially motivated to discriminate against Plaintiff, including, but not limited to, terminating her, because of Plaintiff's sex, age and disability.

103. As a direct and proximate result of WalkMe's discrimination, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

104. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

105. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. WalkMe also acted fraudulently, as it willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an award of punitive damages is warranted in an amount to be determined at the time of trial.

106. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

107. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

///

**THIRD CAUSE OF ACTION**

RETALIATION IN VIOLATION OF FEHA

(California Government Code §§12940(h))

(Against WalkMe and Does 1-50)

108. Plaintiff repeat and reallege all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

109. At all times relevant to this action, FEHA was in full force and binding upon WalkMe. FEHA requires WalkMe to refrain from retaliating against any employee because of their sex, gender, and race.

110. FEHA also requires WalkMe to refrain from retaliating against any employee for exercising rights under FEHA, including, but not limited to, opposing or complaining of discrimination and/or harassment.

111. FEHA also makes it an unlawful employment practice for WalkMe to retaliate against any employee based upon the perception that the employee is a member of a protected class of that the employee is taking or has taken certain actions because the employee is a member of a protected class.

112. Within the time provided under FEHA, Plaintiff filed complaints against Defendants with the CRD in full compliance with these sections and received right-to-sue letters.

113. FEHA is not preempted by the Workers' Compensation Act. *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156.

114. If an individual participates in the decision-making process, tacitly approves of the improper action, fails to take action upon learning of the unlawful conduct, or participates in the unlawful conduct that is the basis of the discriminatory condition, the individual is considered to have aided and abetted under FEHA. *Matthews v. Superior Court* (1995) 34 Cal.App.4th 598.

115. At all times relevant to this action, Plaintiff was a member of a protected class within the meaning of California Government Code §12940 *et. seq*. and WalkMe perceived Plaintiff as being a member of a protected class within the meaning of California Government Code §12940 *et. seq*.

116. Plaintiff exercised her rights under FEHA including, but not limited to, by taking a

medical leave.

117. Plaintiff's exercise of her rights under FEHA was a motivating reason for WalkMe's retaliation towards Plaintiff complained of herein.

118. WalkMe also wrongfully terminated Plaintiff. A motivating factor in these actions was Plaintiff's exercise of her rights under the FEHA.

119. As a direct and proximate result of WalkMe's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

120. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

121. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of her employment benefits. Accordingly, an award of punitive damages is warranted in an amount to be determined at the time of trial.

122. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by the as well by the and through its officers, directors, and/or managing agents.

123. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

///

**FOURTH CAUSE OF ACTION**

FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA

(California Government Code §12940(n))

(Against WalkMe and Does 1-50)

124. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

125. At all times relevant to this action, FEHA was in full force and binding upon WalkMe.

126. California Government Code section 12940(n) makes it unlawful "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

127. FEHA is not preempted by the Workers' Compensation Act. *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156.

128. FEHA provides that an employer with five (5) or more employees must provide an employee with a physical or mental disability medical leave as a reasonable accommodation for the disability. 2 Cal. Code Regs. §11065(p)(2)(M).

129. At all times relevant to this lawsuit, Plaintiff suffered from a disability and medical condition that required ongoing treatment and limited major life activities. Plaintiff's condition falls under the definition of "disability" under California law. WalkMe was aware of Plaintiff's disability and medical condition.

130. As described in detail above, Plaintiff suffered from a medical disability that required a reasonable medical accommodation, including, but not limited to a short leave of absence from work and intermittent breaks from work upon her return from leave.

131. Plaintiff needed a reasonable accommodation in order to accommodate Plaintiff's disability and Plaintiff's reasonable accommodation requests did not impose an undue burden on WalkMe.

132. Plaintiff was willing to participate in the interactive process to determine reasonable

accommodations. WalkMe failed to engage in a timely good-faith interactive process with Plaintiff to determine an effective and reasonable accommodation.

133. As a direct and proximate result of WalkMe's actions, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

134. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to his detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

135. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

136. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

137. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

///

///

///

///

**FIFTH CAUSE OF ACTION**

RETAILIATION FOR REQUESTING ACCOMODATION IN VIOLATION OF FEHA

(California Government Code §12940(l)(4) and (m)(2))

(Against WalkMe and Does 1-50)

138. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

139. WalkMe was at all times material hereto an employer within the meaning of the California Government Code and, as such, was barred California Government Code §12940(m)(2) from retaliating against an employee for requesting a reasonable accommodation.

140. FEHA is not preempted by the Workers' Compensation Act. *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156.

141. Plaintiff exercised her rights under the FEHA by seeking a reasonable accommodation for Plaintiff's disability.

142. WalkMe, as alleged herein above, retaliated against Plaintiff for seeking a reasonable accommodation for Plaintiff's disability.

143. WalkMe also wrongfully terminated Plaintiff's employment. A motivating factor in the termination was Plaintiff's exercise of her rights under the FEHA.

144. As a direct and proximate result of WalkMe's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

145. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

146. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their

unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

147. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

148. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

**SIXTH CAUSE OF ACTION**

FAILURE TO ACCOMMODATE IN VIOLATION OF FEHA

(California Government Code §12940(m)(1))

(Against WalkMe and Does 1-50)

149. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

150. WalkMe was at all times material hereto an employer within the meaning of the California Government Code and, as such, was required by California Government Code §12940(m)(1) to make reasonable accommodations for the known physical or mental disability of an applicant or employee.

151. FEHA is not preempted by the Workers' Compensation Act. *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1156.

152. FEHA provides that an employer with five (5) or more employees must provide an employee with a physical or mental disability medical leave as a reasonable accommodation for the disability. 2 Cal. Code Regs. §11065(p)(2)(M).

153. Furthermore, once an employer is aware of an employee's disability, it has an *affirmative* obligation to make reasonable accommodations for such disability. *Prilliman v. United*

*Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 949–950. This duty arises even if the employee has not formally requested any accommodation as the statute does not require an employee "to speak any magic words" or mention accommodation in order to state a FEHA disability claim. *Id*. at 954.

154. As described in detail above, Plaintiff suffered from a medical disability during her employment that required, among other things, a short leave of absence and intermittent breaks from work throughout the course of the workday. As a result, Plaintiff sought the aforementioned reasonable accommodations.

155. Plaintiff's aforementioned requests for reasonable accommodations to accommodate Plaintiff's disability did not impose an undue burden on WalkMe.

156. WalkMe never offered or discussed any accommodations, despite knowledge of Plaintiff's condition. WalkMe also failed to assess whether Plaintiff's self-directed adjustments and minor breaks were sufficient, or whether additional support could be provided;

157. Instead, WalkMe chose to terminate Plaintiff under false pretenses, while immediately replacing her with a younger employee demonstrating that Plaintiff's role was still very much needed.

158. As a result of the foregoing and as alleged herein, WalkMe failed to properly make reasonable accommodations for Plaintiff's disability.

159. As a direct and proximate result of WalkMe's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

160. As a further direct and proximate result of WalkMe's actions, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to WalkMe's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

161. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with

willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

162. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

163. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover Plaintiff's reasonable attorneys' fees and costs, including expert fees pursuant to the FEHA.

**<u>SEVENTH CAUSE OF ACTION</u>**

RETALIATION FOR TAKING CFRA LEAVE

(California Government Code §12945.2 and 2 C.C.R. §7297)

(Against WalkMe and Does 1-50)

164. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

165. At all times material herein, California Government Code §12945.2 and 2 C.C.R. §7297 were in full force and binding upon WalkMe.

166. At all times relevant hereto, WalkMe was Plaintiff's employer and, therefore, subject to CFRA.

167. WalkMe meets the threshold definition for CFRA coverage of having five (5) or more part-time or full-time employees within a 75-mile radius of Plaintiff's worksite and also WalkMe has held itself out as providing employees at Plaintiff's work site with leave under CFRA.

168. Plaintiff qualified for CFRA leave as Plaintiff worked for more than twelve (12) months (52 weeks) with WalkMe and worked at least 1,250 hours in the twelve (12) month period before the date Plaintiff's leave began.

169. As stated herein, Plaintiff exercised her right to take a CFRA medical leave for her disability. CFRA "prohibits an employer from discriminating or retaliating against an employee or

prospective employee for having exercised or attempted to exercise CFRA rights" and "employers cannot use the taking of CFRA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can CFRA leave be counted against an employee under an employer's attendance policies." Cal. Code Regs. Tit. 2, § 11094(b).

170. WalkMe violated CFRA by terminating Plaintiff upon her return from protected medical leave under CFRA.

171. Plaintiff's request to take and taking of a CFRA medical leave was a motivating reason for WalkMe's retaliation, including, but not limited to, terminating Plaintiff.

172. As a direct and proximate result of WalkMe's conduct, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

173. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

174. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

175. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

176. Plaintiff is further entitled to recover all equitable relief together with interest and Plaintiff's reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

RETAILATION IN VIOLATION OF LABOR CODE §98.6

(California Labor Code §98.6)

(Against WalkMe and Does 1-50)

177. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

178. California Labor Code §98.6 prohibits an employer from retaliating against an employee for filing a bona fide complaint, or a claim, or instituted any proceeding relating to rights under the jurisdiction of the labor commission.

179. Plaintiff's aforementioned protected activity, as described hereinabove, was a motivating factor in WalkMe's decisions that were adverse to Plaintiff, in regard to compensation and terms, conditions and privileges of employment.

180. WalkMe retaliated against Plaintiff as manifested by several acts depicted above and WalkMe, among other things, unlawfully terminated Plaintiff without valid justification.

181. The aforementioned acts are retaliatory against Plaintiff, and a violation against California Labor Code § 98.6. As a result of the foregoing wrongful conduct, Plaintiff is entitled to recover restitution damages in the form of payment of unlawfully withheld wages, including overtime.

182. Pursuant to California Labor Code § 98.6(b)(3), Plaintiff is also entitled to recover a civil penalty of up to ten thousand dollars ($10,000.00) for each of WalkMe's violations of California Labor Code § 98.6.

183. As a direct and proximate result of WalkMe's retaliation, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

184. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered

loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

185. Plaintiff is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of WalkMe acted intentionally with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for Plaintiff's rights. They also acted fraudulently, as they willfully concealed the fact that Plaintiff's employment rights were being violated, with the intent to deprive Plaintiff of employment benefits. Accordingly, an aware of punitive damages is warranted in an amount to be determined at the time of trial.

186. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

187. Plaintiff is also entitled to recover Plaintiff's reasonable attorneys' fees pursuant to Code of Civil Procedure Section 1021.5, the substantial benefit doctrine.

**<u>NINTH CAUSE OF ACTION</u>**

WHISTLEBLOWER RETAILATION

(California Labor Code §1102.5)

(Against WalkMe and Does 1-50)

188. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

189. At all times material to this Complaint, Labor Code §1102.5 was in effect and binding on WalkMe. This section requires WalkMe, or any person acting on behalf of WalkMe, to refrain from retaliating against an employee who discloses information to a person with authority over the employee or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, if the employee has reasonable cause to believe that the information discloses a

violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

190. Labor Code 1102.5 also prohibits WalkMe, or any person acting on behalf of WalkMe, from retaliating against an employee because they believe that the employee disclosed or may disclose information to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

191. As alleged hereinabove, when Plaintiff put WalkMe on notice of these claims, Defendants threatened to countersue Plaintiff if she brought this Complaint concerning the illegal discrimination, harassment, and retaliation that was taking place within WalkMe in violation of state and federal laws.

192. All of the individuals that Plaintiff disclosed the illegal behavior to either had authority over Plaintiff or the authority to investigate, discover, or correct the violations.

193. As a direct and proximate result of WalkMe's conduct, Plaintiff has suffered, and continues to suffer, substantial damages including, but not limited to, back wages, future wages, lost benefits, severe emotional distress, and other pecuniary and non-pecuniary losses in an amount to be proven at trial.

194. As a further direct and proximate result of WalkMe's conduct, Plaintiff has suffered loss of financial stability, peace of mind and future security, and has suffered embarrassment, humiliation, severe mental and emotional pain and distress and discomfort, all to Plaintiff's detriment and damage in amount not fully ascertained but with the jurisdiction of this court and subject to proof at the time of trial.

195. Plaintiff is informed and believes and thereon alleges that the actions of WalkMe's

employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of WalkMe and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

196. WalkMe committed the acts alleged herein oppressively and maliciously, with the wrongful intention of injuring Plaintiff, from an evil and improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Thus, an award of punitive damages is warranted in an amount to be determined at the time of trial.

197. Pursuant to Labor Code §1102.5(f) and in addition to the foregoing, Plaintiff is entitled to the imposition and recovery of a civil penalty of $10,000.00 for each violation.

**TENTH CAUSE OF ACTION**

FAILURE TO PAY ACCRUED VACATION WAGES

(California Labor Code §227.3)

(Against All Defendants)

198. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

199. Pursuant to Labor Code §558.1, not only WalkMe, but any other natural person who is an owner, director, officer, or managing agent of WalkMe may be held personally liable for violations of the directives appearing in the wage orders and in various provisions of the Labor Code, including any PAGA claims or penalties. *See Turman v. Superior Court (Koji's Japan Inc.)* (2017) 17 Cal. App. 5th 969, 986; *see also Atempa v Pedrazzani* (2018) 27 Cal. App. 5th 809, 820.

200. Plaintiff is informed and believes that Adika purposefully violated the Labor Code provisions herein and they either (i) were responsible for implementing and/or approving the implementation of the illegal policies and procedures that violated the California Labor code provisions alleged herein, (ii) had oversight of WalkMe's operations at the time the illegal policies and procedures that violated the California Labor code provisions alleged herein were put into place, (iii) were able to influence and did influence WalkMe's corporate policies and procedures that violated the California Labor code provisions alleged herein.

201. In fact, Adika is an owner and operator of WalkMe. On information and belief, he put

employment policies into effect at WalkMe, which were followed throughout Plaintiff's employment at WalkMe, that violated the California Labor code provisions alleged herein, including, but not limited to, the illegal vacation policy and wage and hour policies applied to Plaintiff.

202. WalkMe's vacation policies constituted a vacation time policy subject to Labor Code § 227.3.

203. Labor Code §227.3 requires WalkMe to pay Plaintiff for all of Plaintiff's accrued, but unused vacation time at the time of Plaintiff's termination. In fact, "[t]he right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered. Case law from this state and others, as well as principles of equity and justice, compel the conclusion that a proportionate right to a paid vacation 'vests' as the labor is rendered. Once vested, the right is protected from forfeiture by section 227.3." *Suastez*, supra, 31 Cal.3d at p. 784.

204. Claims for unused vested vacation pay accrue upon termination of employment, not before, regardless of when the vacation pay was earned. *Church v. Jamison* (2006) 143 Cal. App. 4th 1568. As such, any employee suing for unpaid vacation pay at the end of employment can rely on vacation earned at any time during their employment.

205. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount according to proof at trial, and seek all wages earned and due and interest thereon.

206. Pursuant to Labor Code §218.5, Plaintiff is also entitled to recover their reasonable attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION

FAILURE TO PAY ALL WAGES EARNED UPON DISCHARGE

(California Labor Code §§201, 202 and 203)

(Against All Defendants)

207. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

208. Pursuant to Labor Code §558.1, not only WalkMe, but any other natural person who is an owner, director, officer, or managing agent of WalkMe may be held personally liable for

violations of the directives appearing in the wage orders and in various provisions of the Labor Code, including any PAGA claims or penalties. *See Turman v. Superior Court (Koji's Japan Inc.)* (2017) 17 Cal. App. 5th 969, 986; *see also Atempa v Pedrazzani* (2018) 27 Cal. App. 5th 809, 820.

209. Plaintiff is informed and believes that Adika purposefully violated the Labor Code provisions herein and they either (i) were responsible for implementing and/or approving the implementation of the illegal policies and procedures that violated the California Labor code provisions alleged herein, (ii) had oversight of WalkMe's operations at the time the illegal policies and procedures that violated the California Labor code provisions alleged herein were put into place, (iii) were able to influence and did influence WalkMe's corporate policies and procedures that violated the California Labor code provisions alleged herein.

210. In fact, Adika is an owner and operator of WalkMe. On information and belief, he put employment policies into effect at WalkMe, which were followed throughout Plaintiff's employment at WalkMe, that violated the California Labor code provisions alleged herein, including, but not limited to, the illegal vacation policy and wage and hour policies applied to Plaintiff.

211. California Labor Code §§201 and 202 requires an employer to pay all wages immediately at the time of separation of employment in the event the employer discharges an employee, or an employee provides at least 72 hours of notice of their intent to quit.

212. Labor Code §203 provides that an employer who fails to do so must pay a waiting time penalty of one day of an employee's wages for each calendar day thereafter that they remain unpaid, up to a maximum of thirty (30) days.

213. Waiting time penalties must be paid at the employee's daily wage rate, which is calculated by adding the employee's base wages, commissions, bonuses, and vacation pay that the employee earns in a year, dividing that sum by 52 weeks, and dividing that result by 40 hours. *Drumm v. Morningstar, Inc.* (N.D. Cal. 2010) 695 F.Supp.2d 1014, 1019. Furthermore, waiting time penalties must be paid as a penalty and without taxes or other withholdings taken out of the waiting time penalty.

214. Defendants have not paid Plaintiff for all of Plaintiff's wages due at the time of Plaintiff's separation as there are still wages outstanding as a result of Defendants' violations as

articulated herein nor have Defendants provided Plaintiff with all of the waiting time penalties that are required as a result of Defendants failure to pay all of Plaintiff's wages due.

215. As a result, and pursuant to Labor Code §203, Plaintiff is entitled to recover a "waiting time" penalty of one day of their wages for each calendar day that they remain unpaid, up to a maximum of thirty (30) days.

**<u>TWELFTH CAUSE OF ACTION</u>**

UNLAWFUL BUSINESS PRACTICES

(California Business and Professions Code §17200)

(Against WalkMe and Does 1-50)

216. Plaintiff repeats and realleges all of the allegations set forth in the preceding paragraphs as if the same were fully set forth herein and with the same full force and effect.

217. Plaintiff is informed, believes, and based thereon alleges, that the practices alleged herein constitute an unlawful, unfair, and/or fraudulent business practice, as set forth in Business & Professions Code §17200, *et. seq*.

218. Plaintiff is informed, believes, and based thereon alleges, that the practices alleged herein present a continuing threat to members of the public as WalkMe conducted and continues to conduct business activities while failing to comply with the legal mandates cited herein.

219. Furthermore, such skirting of the legal mandates cited herein presents a threat to the general public in that the enforcement of such laws is essential to ensure that all California employers compete equally, and that no California employer receives an unfair competitive advantage at the expense of its employees.

220. WalkMe has clearly established a policy of accepting a certain amount of collateral damage, as represented by the damages to Plaintiff herein alleged, as incidental to its business operations, rather than accept the alternative costs of full compliance with fair, lawful, and honest business practices, ordinarily borne by its responsible competitors and as set forth in legislation and the judicial record.

221. As a result of Defendants' conduct, Plaintiff has suffered damages, in an amount to be determined according to proof at trial.

222. As a further result of Defendants' unlawful and unfair business practices, Plaintiff is entitled and does seek restitution, and other appropriate relief available under Business and Professions Code §§17200 and 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants in an amount according to proof, as follows:

1. For an order finding in favor of Plaintiff on all counts asserted herein;
2. An order declaring Defendants have engaged in discrimination in violation of the California Fair Employment and Housing Act;
3. For an order declaring Defendants' conduct violated all other statutes and laws referenced herein above;
4. For preliminary and permanent injunctions enjoining and restraining Defendants from continuing the unfair and unlawful business practices set for above, and the requiring the establishment of appropriate and effective policies, procedures, and practices in place to prevent future violations of the aforementioned California laws;
5. For an order providing for the disgorgement of illegally acquired profits by WalkMe during the period starting four years before the filing of the Complaint through the present pursuant to Business & Professions Code §17200, *et. seq*.;
6. For an order awarding make-whole compensatory and equitable relief for Plaintiff' past and future economic damages resulting from the unlawful practices, acts, and omissions, complained of above, including front pay (including benefits) in lieu of reinstatement to restore Plaintiff to her rightful position, in amounts according to proof;
7. For an order awarding Plaintiff for her past and future loss of wages and benefits, plus interest, in amounts according to proof;
8. For an order awarding Plaintiff compensation for her emotional pain, distress, suffering, inconvenience, and humiliation, in amounts according to proof;
9. For an order awarding Plaintiff punitive damages for Defendants' malicious,

oppressive and/or reckless conduct, as described above, in amounts to be determined at trial sufficient to punish, penalize and/or deter Defendants;

10. For an order awarding Plaintiff her reasonable costs of suit, attorneys' fees, and expert witness fees under all applicable statutory or contractual basis;

11. For an order awarding Plaintiff liquidated damages incurred in connection with this action;

12. For restitution of all wrongfully withheld amounts, including, but not limited to wages, in an amount according to proof;

13. For all liquidated damages and statutory penalties authorized or required by law;

14. For an order awarding Plaintiff all general, compensatory, special, and consequential damages according to proof, including, but not limited to, for lost wages and earnings, and all other sums of money, together with interest on these amounts;

15. For declaratory relief and all equitable relief;

16. For an order requiring Defendants to provide other affirmative, equitable and injunctive relief necessary to eradicate the effects of its unlawful employment practices;

17. Continuing jurisdiction over this action to monitor Defendants' compliance with this Court's orders;

18. For pre-judgment and post-judgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment on this matter as required by law, including, but not limited to, Labor Code §§226(h) and 218.5, and 1194;

19. For such other and further relief as this Court may deem necessary, just, and proper.

DATED: August 24, 2026

Respectfully submitted,

**VALLES LAW, P.C.**

By: ______________________________
Daniel Valles
Kayla M. Rathjen
Chase Laurent
Michiko Vartanian

Attorneys for Plaintiff
JANE DOE

**DEMAND FOR JURY TRIAL**

Plaintiff Jane Doe hereby demands a jury trial on all issues so triable.

DATED: August 24, 2026

Respectfully submitted,

**VALLES LAW, P.C.**

By: ______________________________
Daniel Valles
Kayla M. Rathjen
Chase Laurent
Michiko Vartanian

Attorneys for Plaintiff
JANE DOE